IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

D.R. JOHNSON LUMBER COMPANY, an Civil No. 03-1588-AA
Oregon corporation, OPINION AND ORDER

      Plaintiff,

  vs.

FIREMAN'S FUND INSURANCE
COMPANIES, a California
corporation,

      Defendant.

---

Michael Haglund
Julie Weis
Haglund Kelley Horngren & Jones LLP
1800 One Main Place
101 S.W. Main Street
Portland, Oregon 97204-3226
    Attorneys for plaintiff

Daniel Knox
Noah Jarrett
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center, Suite 1600-1900
1211 S.W. Fifth Avenue
Portland, Oregon 97204-9981
    Attorneys for defendant

AIKEN, Judge:

Defendant moves for summary judgment on plaintiff's claim alleging breach of an identified contract of marine insurance, alternatively, defendant moves for partial summary judgment on plaintiff's claim for attorney fees. Plaintiff moves for partial summary judgment as to construction of the insurance policy at issue in this case.

## BACKGROUND

Plaintiff brings this claim under the admiralty jurisdiction of this court as this action involves the interpretation of a marine insurance contract. On or about November 19, 2002, defendant issued an all risks marine cargo insurance policy covering certain radiata pine logs being shipped from New Zealand to Coos Bay, Oregon via ocean carriage. Plaintiff was a named loss payee, and the assured was P and S International, Inc. (PSI), an Oregon corporation.

In January 2003, the logs were unloaded in Oregon and plaintiff learned they had suffered "blue stain" or "sapstain" damage en route. Plaintiff alleges that it has performed all conditions precedent under the terms of the insurance policy issued by defendant. Despite demand, defendant has failed to reimburse plaintiff for the loss of the value of the cargo, a loss currently estimated at $69,210.69, plus prejudgment interest.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to

the nonmoving party. T.W. Electrical, 809 F.2d at 630.

DISCUSSION

Defendant moves for summary judgment arguing that plaintiff's claim should be dismissed as a matter of law because the loss at issue was caused by an "inherent vice" of the cargo and/or delay in the voyage. Plaintiff moves for partial summary judgment arguing that the relied upon delay and inherent vice language is not a part of the parties' contract as a matter of law. Plaintiff asserts that the contract language relied upon by the defendant was not incorporated into the parties' contract, and therefore the language cannot be the basis for denying plaintiff's insurance claim.

1. Which Policy Controls (Open Policy or Special Cargo Policy

Plaintiff moves for Partial Summary Judgment arguing that the Special Cargo Policy controls this dispute.

Plaintiff alleges that on August 23, 2002, it entered into a log purchase agreement with PSI whereby PSI agreed to sell, and plaintiff agreed to purchase, radiata pine logs harvested from a tree farm in New Zealand (the logs). Pursuant to the parties' contract, PSI agreed to obtain insurance coverage for the logs during their ocean carriage from New Zealand to Oregon.

In November 2002, PSI purchased an all risks cargo insurance policy for the logs during their voyage from New Zealand to

Oregon. The certificate of insurance referenced Policy No. OC-94003121 (Open Policy). Durham & Bates (D&B), an Oregon based independent insurance agent and broker, then provided PSI with the Special Cargo Policy "to serve as proof of insurance for other parties, and to trigger Firemans' Fund's billing process[.]" Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, p. 4. Defendant argues that the Special Cargo Policy was never intended to change or modify the insurance contract. The defendant admits, however, that the Special Cargo Policy failed to incorporate the Open Policy by reference.

On or about November 22-23, 2002, the logs were loaded into the hold of the vessel the M/V Westfield in Whangarei, New Zealand. Shortly thereafter, the vessel began its ocean transit from New Zealand to Oregon, arriving at Coos Bay, Oregon during the first week of 2003. Plaintiff alleges that the logs arrived in damaged condition resulting in the insurance claim at issue. Plaintiff filed an insurance claim, referencing the Open Policy, Policy No. OC-94003121. After sending a surveyor to assess plaintiff's damages, defendant denied plaintiff's claim by letter dated October 27, 2003, based on the delay and inherent vice language in the Open Policy, OC-94003121.

Plaintiff asserts that coverage is controlled by the Special Cargo Policy and not the Open Policy. The Special Cargo Policy

does not contain an inherent vice exclusion, although the policy does include a delay clause.

The threshold issue in this case is determining what language constitutes the insurance policy governing the parties' dispute. Defendant argues that the Open Policy (OC-94003121) governs, while plaintiff contends the Special Cargo Policy governs this dispute.

PSI purchased and was billed for the Open Policy to cover the cargo at issue. The defendant asserts and plaintiff acknowledges that the Special Cargo Policy was never provided directly to the plaintiff. Further, defendant argues that the Special Cargo Policy was not intended to modify the coverage and has no effect on the coverage at issue.

I agree that the plaintiff has failed to establish as a matter of law that the Special Cargo Policy is an integrated agreement, or that the coverage provided under the Special Cargo Policy controls to the exclusion of the Open Policy.

PSI sought cargo insurance for their business of importing pine logs through D&B. D&B quoted coverage through defendant Fireman's Fund Insurance Company. PSI then sought insurance from D&B for the single shipment of pine logs at issue in this case. D&B placed that insurance through its "stray risk" open Policy. There is no dispute that the contracting parties, D&B, Fireman's Fund, and PSI, all intended that the insurance be placed under

the Open Policy. PSI and plaintiff received a certificate evidencing coverage under the Open Policy. Defendant admits, however, that D&B omitted the assured's reference (to the Open Policy) on the Special Cargo Policy. Defendant notified D&B of this omission and confirmed with D&B that the coverage was under the Open Policy.

I find that D&B's omission gives rise to an ambiguity as to which policy should govern this case. Ambiguity is a question of law for the court. If the policy is ambiguous, the fact finder may resort to extrinsic evidence to determine the intent of the parties. Yogman v. Parrott, 325 Or. 358, 363-64, 937 P.2d 1019 (1997)(court can consider extrinsic evidence on finding an ambiguity).

Plaintiff has failed to present sufficient evidence that any party intended the Special Cargo Policy to define the terms of the insurance coverage at issue; and that any party intended to enter a contract of insurance under any terms other than those provided by the Open Policy. The extrinsic evidence this court relies on is as follows: the correspondence between D&B's Senior Vice President (McCarthy) who was principally responsible for arranging insurance for PSI for the shipment of pine logs, and PSI's representative, Lewis, referenced the Open Policy; the certificate of insurance provided to both PSI (the contracting party) and plaintiff references the Open Policy; the invoice

indicating payment by PSI to D&B referenced the Open Policy; and the stated intent that the Open Policy controls by all those involved in the making of this contract of insurance (specifically D&B, defendant Fireman's Fund, and PSI).

Upon finding an ambiguity in the insurance contract and after examining extrinsic evidence, the court finds this dispute controlled by the Open Policy. Therefore, plaintiff's motion for partial summary judgment is denied.

2. Exclusions - Inherent Vice and/or Delay

Defendant moves for summary judgment arguing that as a matter of law the loss at issue was caused by an "inherent vice" of the cargo and/or delay in the voyage. The Open Policy at issue here contains exclusions for both inherent vice and delay. Alternatively, the defendant moves for partial summary judgment arguing that plaintiff's claim for attorney fees should be dismissed.

This case requires the court to determine whether, as a matter of law, a reasonable trier of fact could find that plaintiff's damages were caused by anything other than delay and inherent vice.

The warranty at issue here provides: "Warrantied free of claim for loss of market or for loss, damage, deterioration, or expense arising from delay, whether caused by a peril insured against or otherwise, or from inherent vice or nature of the

goods insured."

I cannot rule as a matter of law that plaintiff's loss is exempt from coverage due to "delay." Testimony supports plaintiff's assertion that there was no set transit time for the transaction. The logs were loaded onto the vessel on or around November 23, 2002, and the estimated arrival date in Coos Bay, Oregon was on or around December 29, 2002 through January 1, 2003. The logs actually arrived in Coos Bay, Oregon on or around January 6, 2003. I find no evidence that the vessel had a set transit time and was delayed.

Defendant next argues that plaintiff's loss is not covered due to "inherent vice." "Inherent vice" is generally defined as a characteristic of the cargo itself that, alone, causes its destruction, without any intervening "fortuitous" event. "Inherent vice" can be assumed to be the proximate cause of loss or damage if the facts indicate that no fortuity or causality had occurred. Defendant relies on the expert opinion of Terry Amburgey, Ph.D who opined that: the debarked pine logs suffered the inherent vice of susceptibility to sapstain fungi infestation; nothing fortuitous happened to these logs to cause the sapstain fungi infestation; the use of "grabbers" was irrelevant to the development of the sapstain; and sapstain fungus spores are ubiquitous and airborne, like oxygen or water vapor. Therefore, defendant asserts that the infestation of the

Page 9 - OPINION AND ORDER

debarked logs was as inevitable as the "rotting of bananas, or the rusting of iron exposed to air." Defendant argues that the "undisputed evidence" establishes that the loss occurred only due to the susceptibility of the cargo to sapstain fungi infestation, therefore plaintiff cannot recover for its loss and summary judgment must be granted.

Plaintiff disputes defendant's "inevitability" argument relying on the expertise of Edward Higgins, Ph.D, a wood technology scientist with substantial "blue stain" experience (also called sapstain). Dr. Higgins testifies that although he generally agrees with defendant's proposition that untreated debarked radiata pine logs are susceptible to blue stain, he disputes defendant's assertion that the blue stain damage to the logs at issue here was "inevitable." Dr. Higgins states that the logs were treated with a suitable fungicide in a timely fashion which means that the sapstain damage to the logs was not inevitable during transit. Plaintiff also relies on the testimony of David Sayer, the general manager of the company that supplied the logs at issue. He testified that the logs were handled in a commercially acceptable fashion for the prevention of blue stain. Specifically, the logs were treated with a suitable fungicide in a timely manner and should have been protected against blue stain for at least three months - longer than the duration of the voyage. Sayer also testified that he

has been involved in many successful transoceanic shipments of radiata pine logs and disagrees with defendant's assertion that damage to the logs was inevitable. Both Sayer and Dr. Higgins' testified that based on their training and experience, the logs at issue here were handled in a way (up to the point of delivery to the dock) that should have prevented blue stain during shipment, absent a fortuitous event.

I find that plaintiff has set forth sufficient evidence that it was not inevitable the logs would suffer blue stain damage during shipment. I further find that a reasonable trier of fact could find that plaintiff's damages were caused by something other than inherent vice, therefore, defendant's summary judgment motion on this issue is denied.

3. <u>Plaintiff's Claim for Attorney Fees and Costs</u>

Defendant moves alternatively for partial summary judgment on plaintiff's claim for attorney fees. That motion is granted and plaintiff's attorney fee claim is stricken. Plaintiff seeks: "reasonable attorney fees, costs and disbursements incurred herein." Complaint, p. 2. This seems to be a claim for plaintiff's fees, costs and disbursement incurred in the action at bar. In admiralty cases, each party must bear its own attorney fees absent a statute or contract stating otherwise, and absent bad faith. <u>Vaughan v. Atkinson</u>, 369 U.S. 527 (1962). I find none of those circumstances present in this case. Further,

Oregon law provides that attorney fees are not available in coverage cases involving "wet marine insurance policies." Or. Rev. Stat. 742.001. Plaintiff acknowledges that the policy at issue here is a wet marine and transportation insurance policy. Therefore, any claim for attorney fees by plaintiff must be based on the insurance contract itself. The "sue and labor" clause of the contract states as follows: "In case of any imminent or actual loss or misfortune, it shall be lawful and necessary for the Assured . . . to sue, labor, and travel for, in and about the defense, safeguard, and recovery of the goods insured . . . . Subject always to the applicable limit of liability, sue and labor charges are payable irrespective of percentage." Defendant's Ex. A, p. 12, ¶ 28. This clause allows an assured compensation for acting to protect the interests of the underwriters. Specifically, this clause requires the assured to take such action for the protection of the cargo and allows the assured to then charge those expenses to the underwriters. See Commodities Reserve Co. v. St. Paul Fire & Marine Ins. Co., 879 F.2d 640 (9th Cir. 1989). Plaintiff's assertion that it did, in fact, incur attorney fees and costs to avoid diversion of the cargo by the carrier for nonpayment is not a "sue and labor" expense. Further, I find no evidence that plaintiff reimbursed PSI for any expenses. Therefore, plaintiff's claim for attorney fees is stricken and defendant's motion for partial summary

Page 12 - OPINION AND ORDER

judgment on this issue is granted.

## CONCLUSION

Defendant's motion for summary judgment (doc. 21) is denied. Defendant's alternative motion for partial summary judgment (doc. 21) is granted. Plaintiff's claim for attorney fees is stricken. Plaintiff's partial motion for summary judgment (doc. 25) is denied. Finally, defendant's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this 12 day of April 2005.

Ann Aiken
United States District Judge